

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| EDWIN MANLEY, § | |
|     Plaintiff, § | |
| § | |
| vs. § | |
| § | Civil Action No. 3:22-03881-MGL |
| PROFESSIONAL DISPOSABLES § | |
| INTERNATIONAL, INC., TRU-D SMART § | |
| UVC, LLC, CHARLES E. DUNN, JR., § | |
| BRYAN PIETRI, and SANDRA VALENTIN, § | |
|     Defendants. § | |

**MEMORANDUM OPINION AND ORDER
DENYING INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION
AND DISMISSING WITHOUT PREJUDICE THEIR MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM**

### I.    INTRODUCTION

Plaintiff Edwin Manley (Manley) filed this action against Defendants Professional Disposables International, Inc. (PDI), Tru-D Smart UVC, LLC (Tru-D) (collectively, Entity Defendants), Charles E. Dunn, Jr. (Dunn), Bryan Pietri (Pietri), and Sandra Valentin (Valentin) (collectively, Defendants) in state court.

In Manley's complaint, he alleges state law causes of action against Entity Defendants for breach of contract, breach of contract accompanied by a fraudulent act, and quantum meruit.  He also alleges a cause of action for breach of the South Carolina Payment of Wages Act (SCPWA), S.C. Code Ann. § 41-10-10, *et seq.*, against Defendants.

PDI, Tru-D, Dunn, and Pietri subsequently removed the case to this Court, claiming it has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Valentin was unserved at the time of removal.

Pending before the Court are Dunn, Pietri, and Valentin's (collectively, Individual Defendants) motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Having carefully considered the motions, the response, the reply, the record, and the applicable law, it is the judgment of the Court Individual Defendants' motion to dismiss for lack of personal jurisdiction will be denied and their motion to dismiss for failure to state a claim will be dismissed without prejudice.

**II.     FACTUAL AND PROCEDURAL HISTORY**

This case arises out of Defendants' alleged wrongful withholding of wages from Manley.

Manley, a South Carolina resident, worked for Defendants as a salesman of their Tru-D Smart UVC disinfection robot (the robot). Tru-D is a majority-owned subsidiary of PDI.

Pietri, who resides in Tennessee, was at that time the National Sales Director for Tru-D. Dunn, who also lives in Tennessee, is president of Tru-D. Valentin, who is a resident of New York, is the human resources director of PDI. Dunn filed a tax return here in 2021.

In 2010, Manley met with Dunn in South Carolina to discuss the robot, which Manley had interest in selling. Dunn suggested that, to impress him, Manley buy a robot himself and sell it. Manley did so, and from 2010 to 2019 worked as an independent contractor for Tru-D selling robots.

At the time Manley became an employee of PDI and Tru-D in 2020, the parties agreed, pursuant to an employment agreement, upon Manley's base salary and commission rate for that year. After COVID-19 created increased demand for the robot, however, PDI and Tru-D changed its compensation structure for 2021. This new structure increased employee base pay but decreased the commission rate. It applied the new base pay and commission rate for sales made in 2020 but not yet shipped by the end of the year. Pietri notified employees of this change.

Manley alleges Defendants delayed shipment of the robots to avoid paying the 2020 commission rate. Manley approached Individual Defendants to recover his lost wages, but they refused. Manley eventually quit. Upon termination of his employment with Defendants, they also declined to pay out his earned paid time off (PTO).

After Manley filed this suit and PDI, Tru-D, Dunn, and Pietri removed the matter to this Court, Individual Defendants moved to dismiss. Manley responded to the motions, and Individual Defendants replied. The Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

### III.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A.  *Standard of Review*

A defendant may bring a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Courts must make a separate personal jurisdiction determination as to each defendant who raises the issue. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

Once a defendant makes such a motion, the plaintiff bears the burden of establishing personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 267–68 (4th Cir. 2016). When the Court evaluates personal jurisdiction based solely upon the motion papers, affidavits, memoranda,

3

and complaint, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion to dismiss. *Id.* at 268.

The Court, in such an analysis, must take the relevant allegations and evidence in the light most favorable to the plaintiff. *Id.* at 268.

Personal jurisdiction over an out-of-state defendant may be either general or specific. "[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what is required to establish specific jurisdiction. *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

On the other hand, as to specific jurisdiction, the Court must perform a two-step analysis. The Court must first determine whether the forum state—here, South Carolina—long-arm statute provides a basis for asserting jurisdiction over the defendant. *Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir.1997). Then, the Court must determine that the exercise of personal jurisdiction fails to violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id*.

South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

To evaluate the due process requirements for asserting personal jurisdiction, the Fourth Circuit has established a three-part test in which courts consider the following: (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the forum state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citation omitted).

### B.     Discussion and Analysis

As no Individual Defendant is domiciled in South Carolina, general personal jurisdiction is nonexistent.  The Court thus focuses its analysis on whether specific personal jurisdiction over Individual Defendants is present in this case.

#### 1.     *Whether Individual Defendants have minimum contacts with South Carolina from which Manley's claims arise*

Individual Defendants insist they failed to personally engage in any activity purposely aimed toward South Carolina, so they are not subject to personal jurisdiction in the state.  Manley responds that Individual Defendants' actions giving rise to this suit were aimed at him in South Carolina, and thus suffice to establish minimum contacts.

For ease of analysis, the Court considers the first and second parts of the Fourth Circuit's test—the extent to which Individual Defendants purposefully availed themselves of the privilege of conducting activities in the forum state and whether the Manley's claims arise out of those activities directed at the forum state—contemporaneously in this section.  With the exception of Dunn, who met with Manley in South Carolina in 2010 and filed a tax return in South Carolina in 2021, it appears most of the Individual Defendants' contacts with the forum involve the specific claims in this case.

        *a.*    *Whether Manley has alleged specific actions taken by the Individual Defendants, rather than just Defendants generally*

Under the minimum contacts standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In other words, a defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

But,

> if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, . . . under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally.

*Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir. 1983). Thus, the Court must look to the actions of the Individual Defendants themselves, as opposed to the actions of the Entity Defendants.

The allegations against Individual Defendants rest on more than their positions as officers and employees of Entity Defendants.

For example, Manley alleges Pietri informed him of the change in payment structure by sending an email to him in South Carolina. Manley complains that Dunn informed him, while on a call during which Manley was in South Carolina, that PDI's leadership had "hammered" him to reduce wages, indicating his personal involvement in the alleged acts. Complaint ¶ 60. And, he maintains Valentin indicated to Manley, via email, that she had the power to release his lost wages, but refused to do so.

6

Manley thus contends that they themselves took actions that harmed him—albeit because of their role with Entity Defendants—due to their personal involvement in the changed pay structure and the withholding of his wages.

In other words, it is their alleged actions, rather than their titles, that give rise to Manley's cause of action against them. Manley alleges each Individual Defendant took actions related to this lawsuit. The Court, then, must determine if these alleged actions are sufficiently connected with South Carolina to establish minimum contacts.

### b.     Whether Individual Defendants' actions in this case constitute minimum contacts with South Carolina

Manley points to *Calder v. Jones*, 465 U.S. 783 (1984), to support his contention that personal jurisdiction exists here. In that case, the Supreme Court held that a Florida-resident editor of a magazine with large circulation in California was subject to personal jurisdiction in California. *Id.* at 790. The editor had been to California only twice. *Id.* at 786. But, he edited and approved the allegedly libelous article, which "concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89.

Here, Individual Defendants' alleged actions concerned wages paid to a South Carolina resident for work done in South Carolina for Defendants', including Individual Defendants', benefit. Individual Defendants' own actions allegedly impacted their employee's livelihood in South Carolina. They directly communicated with Manley while, presumably, knowing he was in South Carolina. Therefore, like in *Calder*, they knew Manley would feel any injuries and harm caused by their actions in South Carolina.

Similar to *Calder*, therefore, Individual Defendants interacted with the forum state to commit the alleged wrongdoing. Therefore, the Court concludes Individual Defendants "purposefully avail[ed] [them]sel[ves] of the privilege of conducting activities within [South Carolina][,]" *Hanson*, 357 U.S. at 253, "such that [they] should reasonably anticipate being haled into court []here[,]" *World–Wide Volkswagen Corp.*, 444 U.S. at 297. And, Manley's claims arise out of Individual Defendants' contacts with the forum.

Therefore, the first two elements of the Fourth Circuit's test are met here. The Court must next consider whether the exercise of jurisdiction in this case "would comport with 'fair play and substantial justice'" such that it is constitutionally reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

### 2. *Whether jurisdiction is constitutionally reasonable*

The parties fail to discuss whether personal jurisdiction is constitutionally reasonable. Nevertheless, the Court considers the issue briefly here.

In determining whether the exercise of jurisdiction is constitutionally reasonable, the Court evaluates

> [1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477).

After reviewing these factors, the Court finds that exercising specific personal jurisdiction fails to violate Individual Defendants' due process rights.

First, the burden on Individual Defendants of litigating in South Carolina is minimal. All Defendants, for example, are represented by the same attorneys, several of whom are located in South Carolina. And, they would likely serve as witnesses at—and thus attend—any trial, whether or not they remain parties. Second, South Carolina has an interest in protecting the employment rights of its residents and discouraging future violations. Third, Manley has a strong interest in obtaining convenient relief in a common, accessible forum.

Fourth, there is an interstate interest in obtaining efficient resolution in a single forum, and litigating this case in South Carolina is in the interests of judicial economy. The Entity Defendants have failed to object to jurisdiction in this state. Fifth and finally, South Carolina has a substantial interest in cooperating with other states to provide a forum for efficiently litigating Manley's cause of action to further fundamental substantive social policies.

Accordingly, the Court holds it is constitutionally reasonable to exercise personal jurisdiction over Individual Defendants. It will therefore deny the motion to dismiss based on personal jurisdiction.

### IV.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Court has reviewed the briefing as to Individual Defendants' assertion that the Court should dismiss them based upon Manley's failure to state a claim. It is of the firm opinion that this argument is better addressed at the summary judgment stage. It will therefore dismiss without prejudice the motion to dismiss for failure to state a claim.

## V.    CONCLUSION

For the reasons stated above, it is the judgment of the Court Individual Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED** and their motion to dismiss for failure to state a claim is **DISMISSED WITHOUT PREJUDICE**.

   **IT IS SO ORDERED.**

Signed this 9th day of May 2023, in Columbia, South Carolina.


                              s/ Mary Geiger Lewis
                              MARY GEIGER LEWIS
                              UNITED STATES DISTRICT JUDGE